Lee E. WANGER, Plaintiff–Appellant,

v.

G.A. GRAY COMPANY,
Defendant–Appellee.

No. 88–3444.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 9, 1989.

Decided April 6, 1989.

---

**2.** This rule is modelled after Federal Rule of Appellate Procedure 28.

Paul H. Tobias (argued), Tobias & Kraus, Cincinnati, Ohio, for Lee E. Wanger.

Robert W. Maxwell, II (argued), Keating, Muething & Klekamp, Cincinnati, Ohio, for G.A. Gray Co.

Before MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiff-appellant Lee Wanger appeals from the summary judgment granted by the district court on April 18, 1988, and the subsequent amended summary judgment entered on May 2, 1988, in favor of defendant-appellee G.A. Gray Company ("Gray") which dismissed this action filed pursuant to the Age Discrimination in Employment Act ("ADEA" or "Act"), 29 U.S.C. §§ 621–634 (1985). The issue before us is whether the district court erred in holding that Wanger's failure to apply for an available position with Gray, his former employer, is fatal to his ADEA claim. For the reasons that follow, we affirm.

## I.

### A. *Procedural History*

Wanger filed an age discrimination charge against Gray with the Equal Employment Opportunity Commission ("EEOC") on July 1, 1985. The EEOC informed Wanger on August 14, 1985, that it would not proceed with his charge.

Wanger filed this action on February 28, 1986, alleging that Gray violated the ADEA. He also raised a pendent state age discrimination claim pursuant to Ohio Rev. Code Ann. § 4101.17 (Anderson 1980).

Gray subsequently moved for summary judgment on March 27, 1986. In a Report and Recommendation filed on February 20, 1987, a magistrate recommended that Gray's motion for summary judgment be granted and that the complaint be dismissed in its entirety. The magistrate concluded that Wanger had not timely filed with the EEOC and, in the alternative, that he failed to establish a prima facie case of age discrimination in violation of either federal or state law. On March 2, 1987, Wanger filed objections and moved for review of the Report and Recommendation of the magistrate.

On April 18, 1988, the district court modified and then adopted the magistrate's Report and Recommendation. The district court held that the magistrate erred in concluding that Wanger had not timely filed an EEOC charge, but adopted the magistrate's conclusion that Wanger had failed to establish a prima facie case of age discrimination. Specifically, the district court held that Wanger's failure to make either written or oral application for a position with Gray was fatal to his failure-to-rehire claim. Accordingly, the district court dismissed Wanger's federal claim with prejudice and his state claim without prejudice. This timely appeal followed.

### B. *Factual Background*

Wanger was employed by Gray in 1959 and continued in employment until his termination on July 1, 1983, at the age of fifty-one. Wanger worked in the repair parts department providing services to customers concerning the ordering and acquisition of repair parts for machine tools. From 1959 to 1982, the repair parts department was under the control of Gray's sales division. For ten to twelve years prior to 1982, Wanger was supervised by Jack Disser. However, in 1982, the repair parts

department was transferred from the sales division to Gray's manufacturing division, and Wanger was placed under the supervision of Melody Donohoo. Gray's business began to decline, however, and on June 30, 1983, Wanger was informed by Donohoo's supervisor, Dennis Cook, that Wanger was going to be terminated because of a reduction in force necessitated by the decline in business.

Wanger subsequently met with Earl Prisby, Gray's personnel director, and Prisby explained the reason for the termination. When Wanger inquired whether he might be called back, Prisby informed him that "there is a chance if they get busy again and things pick up your phone could ring."

In August of 1984, Donohoo resigned her position. At that time, the repair parts department was placed back under the control of the sales division under the supervision of Disser. Disser decided to hire another person in the repair parts department to take parts orders and to work with the repair parts department's computer. Disser did not call Wanger and notify him that a position was available. Instead, he ran an advertisement in the Sunday edition of *The Cincinnati Enquirer* on September 9, 1984, for a customer service position. The advertisement stated that the company was looking for a "customer oriented individual ... to receive, process and expedite replacement part orders. A strong desire to gain extensive product knowledge and make optimum use of our computerized order and parts system are required." J.A. at 25.

The advertisement drew over 100 responses and led to interviews for fifteen. Wanger did not respond. Everyone who was interviewed had answered the advertisement by submitting a resume. Disser testified that although he did not consider Wanger an applicant, he did think about Wanger, considered his qualifications, and concluded that he was not qualified for the position.

Gray offered the position to Michael Latimer on October 4, 1984. Latimer had been working as a customer service representative with a competitor of Gray whose operations were virtually the same. Latimer was thirty-six years old at the time of his hiring. The individual he replaced, Donohoo, was twenty-eight years old at the time of her resignation.

Following his termination with Gray, Wanger accepted his twelve-month severance pay package and cashed in his retirement pension. He passed the necessary examinations and became a licensed insurance agent, and also worked as a realtor.

In late November of 1984, Wanger learned that Latimer had been hired. After talking with several former coworkers, Wanger called Gray's general manager to protest the hiring of Latimer and the company's failure to bring him back. The general manager explained that he did not get involved with call-backs in hiring, and promised to look into Wanger's concerns. Thereafter, Gray's director of employee relations sent a letter to Wanger on December 10, 1984, inviting him to call the employee relations department for assistance or answers to his questions.

Wanger testified on deposition that he never called or tried to call the director of employee relations. He also testified that he never again contacted Gray's general manager or anyone else at Gray prior to filing his age discrimination charge with the EEOC on July 1, 1985.

## II.

There is a clearly enunciated rule in this circuit that age discrimination cases are to be decided on a "case by case basis." While this circuit allows the use of a modified version of the criteria set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a mechanistic application of *McDonnell Douglas* has been explicitly discouraged. *Merkel v. Scovill, Inc.,* 787 F.2d 174, 177 (6th Cir.) (quoting *Sahadi v. Reynolds Chem.,* 636 F.2d 1116, 1118 n. 3 (6th Cir.1980) (per curiam)), *cert. denied,* 479 U.S. 990, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir.1982). In-

stead of a mechanistic application of the *McDonnell Douglas* guidelines, a trial judge is to consider "direct evidence of discrimination, and circumstantial evidence other than that which is used in the *McDonnell Douglas* criteria." *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1180 (6th Cir.1983).

Generally, in an age discrimination case a discharged employee presents a prima facie case "by introducing evidence that he was adversely affected by the defendant's employment decisions 'under circumstances which give rise to an inference of unlawful discrimination.'" *Ridenour v. Lawson Co.*, 791 F.2d 52, 55 (6th Cir.1986) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). "The term 'prima facie case', as applied in ADEA cases 'means only that the plaintiff has produced enough evidence to shift the burden of production to the defendant.'" *Id.* at 55 (quoting *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 291 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983)). Stated another way, "the plaintiff carries the ultimate burden of persuasion to establish by a preponderance of the evidence that, as an individual protected by the statute, he was dismissed, demoted, or not hired because of his age." *Wilkins v. Eaton Corp.*, 790 F.2d 515, 520 (6th Cir.1986).

■ In this case, Wanger concedes that he is only contesting Gray's failure to rehire him when a position became available in 1984 and that he is not contesting his discharge in 1983. In order to make out a prima facie case of age discrimination in a failure-to-rehire situation, a plaintiff must meet a modified *McDonnell Douglas* test. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. He must establish:

(1) that he is a member of the protected age group;

(2) that he is qualified for the rehire or recall position;

(3) that he applied for the available position or can establish that the employer was otherwise obligated to consider him; and

(4) that the position went to a younger individual outside the protected class or that other reasonable evidence exists for inferring that he was denied a position because of his age.

*See generally Wilkins*, 790 F.2d at 520 (quoting *Ackerman*, 670 F.2d at 69); *Blackwell*, 696 F.2d at 1180–81; *Owens v. Freeman United Coal Mining*, 649 F.Supp. 1565, 1568 (S.D.Ill.1986). In granting Gray's motion for summary judgment, the district court concluded that Wanger had not established a prima facie case of discrimination because he did not establish that he applied for the position in question.

■ Wanger contends that the district court's holding was in error because it was not necessary for him to formally apply for the position. In certain situations a formal application is not necessary in order to establish a prima facie case of discrimination. In *Babrocky v. Jewel Food Co. and Retail Meatcutters Union, Local 320*, 773 F.2d 857 (7th Cir.1985), female meat wrappers brought a Title VII action alleging that they had been denied meat-cutter positions solely because of their sex. The Seventh Circuit concluded that their failure to formally apply for the positions in question was not fatal. "Because an employer may create an atmosphere in which employees understand that their applying for certain positions is fruitless, even nonapplicants can in appropriate circumstances qualify for relief...." *Id.* at 867. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 367–68, 97 S.Ct. 1843, 1870–71, 52 L.Ed.2d 396 (1977) ("Victims of gross and pervasive discrimination" are not required to formally apply for a position if they can establish that but for the employer's discriminatory practices they would have applied for a job.); *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 761 (9th Cir. 1980). In the present case, however, Wanger makes no effort to establish that such a situation existed at Gray. The mere fact that Gray thought about Wanger and generally concluded that he was probably not qualified does not amount to creating an atmosphere of futility.

In *Box v. A & P Tea Co.*, 772 F.2d 1372 (7th Cir.1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986), an employee brought a Title VII action alleging that she was denied a promotion because of her sex. With regard to her failure to formally apply for promotion, the Seventh Circuit held that if her employer "had a formal system of posting job openings and allowing employees to apply for them, [her] failure to apply for [a promotion] would prevent her from establishing a prima facie case." *Id.* at 1376. However, the Seventh Circuit held that if the employer promotes employees into the positions in question without asking for applications or posting the opening so that employees could apply for the positions, then "the application requirement of the prima facie case is loosened somewhat. In this situation, the plaintiff can establish the application element of a prima facie case by showing that, had she known of an .... opening, she would have applied." *Id.* at 1377 (citation omitted). *See Chavez v. Tempe Union High School Dist. No. 213,* 565 F.2d 1087, 1091–92 (9th Cir.1977); *Rodgers v. Peninsular Steel Co.*, 542 F.Supp. 1215, 1220 (N.D.Ohio 1982). In order for the employee to establish that he or she would have applied for the position if they had been aware of it, however, the employee must establish that she had shown more than a mere general interest in the position. *Box*, 772 F.2d at 1377.

In the present case, the record shows that Gray publicized the position, received numerous applications, and interviewed several people for the position. Therefore, it is clear that Gray did not have a policy of hiring without publicizing the position and accepting applications. In any event, the job opportunity advertisement published in the newspaper must be construed as constructive notice to Wanger of the job, necessitating that he apply before alleging discrimination.

Wanger argues that because the company indicated that there was a possibility that his phone might ring in the future, he was not terminated but was laid off, subject to recall. However, Wanger's termination letter unequivocally indicates that he was terminated. Moreover, there is nothing in the record to indicate that it was Gray's employment practice to recall former employees or to inform them of future job openings. On the contrary, the job opportunity advertisement published in the newspaper is an indication that Gray had no such policy.

An initial inquiry in any failure-to-rehire case is whether the employer is under an obligation to consider the plaintiff for the position. Generally, if one formally applies for the position, then the employer is under an obligation to consider the individual if he is otherwise qualified. However, as noted above, there are certain situations where less than a formal application is adequate. Wanger attempts to show that Gray had a policy of recalling employees that had been laid off. However, Wanger was not laid off; he was terminated. He had completely severed any relationship with the company by cashing out his retirement pension, exhausting his twelve-month severance pay package, and engaging in another vocation. In this case, where Wanger as the former employee and Gray as his former employer are strangers, there is no evidence in the record to suggest that Gray was obligated to consider Wanger for rehire. *See Payne v. Bobbie Brooks, Inc.*, 505 F.Supp. 707, 716–17 (N.D.Ohio 1980) (In the absence of a showing of futility or employer awareness that could constitute the functional equivalent of an application, one must apply for the position in question before claiming employment discrimination), *aff'd*, 701 F.2d 180 (6th Cir.) (unpublished), *cert. denied*, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982). While there are limited situations where an employee does not have to formally apply for a position before alleging discrimination, this case does not represent one of them.

We recently dealt with a situation similar to that presented in this appeal in *Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620 (6th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987). In that case, the plaintiff brought a failure-to-hire case alleging he was denied a position with the defendant because of his race. He had

earlier applied several times with the company, but those applications were disposed of pursuant to the company's policy of throwing out applications that had been in their files for more than one year. At the time the opening in question occurred, the plaintiff did not have an application in the company's files. However, the company was well aware of his desire for a position in light of the fact that he had alleged racial discrimination in their hiring practices on several earlier applications.

In reversing the district court's judgment for the plaintiff, we held that Williams had failed to establish a prima facie case of discrimination because he had never submitted an application during a time when the applications were being accepted. *Id.* at 629. In rejecting the district court's conclusion that a generalized expression of interest may be considered an application, we held that

> it cannot fairly be said that everyone who ever expressed an interest in working for [the company] had "applied" to work there. [The company] was not required to accept applications before it needed new employees, and when it decided to start accepting applications it was not required to seek out all who could be said to have given a "generalized expression of interest" in the past ... and invite them to apply for work...."

*Id.* at 630.

In the present case, we hold that the district court properly concluded that Wanger failed to state an ADEA claim because he failed to establish that he applied for the available position. With limited exceptions, one cannot establish that he was subject to an adverse hiring decision unless he makes his desire for the position known to the employer. As one court has recognized, "[t]he requirement that an age discrimination plaintiff apply for the job is grounded in common sense. For if an application were not necessary, then nearly every decision to hire or promote would be subject to challenge." *Reilly v. Friedman's Express, Inc.*, 556 F.Supp. 618, 623 (M.D.Pa.1983).

Finally, Wanger contends that the district court erred in dismissing his pendent state claim. However, it is the general "rule of this circuit that if a plaintiff has not stated a federal claim, his pendent state law claims should be dismissed." *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir.1988); *see also Hooks v. Hooks*, 771 F.2d 935, 944–45 (6th Cir.1985); *Bird v. Summit County*, 730 F.2d 442, 444 (6th Cir.1984) (per curiam).

### III.

We hold that under the facts of this case, Wanger's failure to apply for the position that became available with his former employer is fatal to his federal age discrimination claim. Accordingly, the judgment of the district court is AFFIRMED.