**James L. STEINER, Plaintiff,**

v.

**ENVIROSOURCE, INC., et al., Defendant.**

No. 4:99CV2582.

United States District Court, N.D. Ohio.

March 20, 2001.

---

Thomas D. Robenalt, Novak, Robenalt, Pavlik & Scharf, Cleveland, OH, for plaintiff.

Paul Leslie Jackson, Akron, OH, Aretta K. Bernard, Roetzel & Andress, Akron, OH, Donald S. Scherzer, Roetzel & Andress, Cleveland, OH, for defendants.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the summary judgment motion of Defendants, Envirosource, Inc. ("Envirosource") and International Mill Service, Inc. ("IMS") (ECF–Dkt.# 35). The Plaintiff, James L. Steiner ("Steiner"), alleges that he was discharged by the Defendants based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and the Ohio Revised Code (Complaint ¶ 13).

For the following reasons, the Defendants' summary judgment motion (ECF–Dkt.# 35) is **GRANTED.**

## FACTS

The following facts are uncontested unless otherwise noted. After accepting early retirement from another steel company in October 1990, the Plaintiff, James L. Steiner, accepted part-time employment with Defendant IMS as an hourly consultant. On April 1, 1991, IMS hired him as a full time daylight maintenance foreman

at Koppel Steel. The Plaintiff was fifty-five years old at the time he was hired. From April 1, 1991, until March 1996, the Plaintiff worked for the Defendants at the Koppel Steel facility as a maintenance supervisor. After the Defendants lost their contract at Koppel Steel in March 1996, the Defendants transferred the Plaintiff to their Weirton facility where the Plaintiff maintained various heavy equipment. Between January 1997, and April 1997, the Defendants sent the Plaintiff to a facility in Cartersville, Georgia to perform an evaluation of heavy equipment. During that period of time, the Plaintiff traveled between the Weirton facility and the Cartersville facility regularly.

In April 1997, the Defendants' director of human resources, John Carroll ("Carroll"), met with the Plaintiff and informed him that he would be laid off. The Plaintiff objected and insisted on working. The Plaintiff alleges that when he inquired why he was being laid off, Carroll stated, "Oh, you are old enough to retire." (Steiner Dep. at 73–4.) The Defendants claim this statement was never made. The Plaintiff was re-assigned to the Weirton facility to perform "catch-all" maintenance duties, and was paid at a foreman's rate.

The Plaintiff contends that he had a subsequent encounter with his immediate supervisor at the Weirton facility, William Young ("Young").[1] Although the Plaintiff cannot recall the date of the encounter, Young allegedly remarked to him, "why don't you put a package together what it would take for you to retire." (Steiner Dep. at 165). Young asserts that he does not remember this conversation ever taking place. (Young Dep. at 39–40).

On November 18, 1998, the Defendants discharged the Plaintiff. Around the same time the Plaintiff was laid-off, the Defendants laid-off thirteen other employees at

the Weirton facility. Twelve of these employees returned to work within a short time period. The Defendants claim that three positions were eliminated, including one "fill-in" foreman position. The Plaintiff has conceded that no one, to his knowledge, was hired to replace him or take over his job duties at the Weirton facility. (Steiner Dep. at 117–18.)

Although, the Plaintiff maintains that he was fired and not given any explanation, the Defendants assert that they informed the Plaintiff that his job was being eliminated because it was no longer economically feasible. The Defendants further explain that at the time of the Plaintiff's lay-off, they were experiencing a significant reduction in customer orders due to a steel import crisis. The Plaintiff acknowledged this in his deposition: "Yes, I knowed [sic] that, that was everywhere. The steel industry sort of bottomed out, yes." (Steiner Dep. at 244.) The Plaintiff also acknowledged that the Weirton facility was experiencing a downturn in production. (Steiner Dep. at 244–45.)

The Plaintiff, in is Response, nonetheless contends that the Weirton facility never worked at full capacity during his time there, and that the facility did not experience a slowdown. (Pl. Response at 7.) The Plaintiff further asserts that at the Weirton facility, "[i]t seemed like they were still putting out steel." (Steiner Dep. at 246.) The Plaintiff, however, has not offered any evidence in support of this contention beyond his personal opinion.

At the time of his lay-off in November 1998, the Plaintiff wanted to continue working, and contends that he asked Young if there were any available positions at any of Defendants' facilities. The Plaintiff asserts that Young responded that there were no openings to which Plaintiff

---

1. Young was the site superintendent at Weir- ton.

could be transferred. (Steiner Dep. at 120.) However, there was a maintenance job open at the Mingo Junction facility which had been posted in the Steubenville Herald for ten days prior to the Plaintiff's discharge. The Plaintiff was arguably qualified for the job, but was not offered the position, or even made aware of it by the Defendants. The Defendants hired a forty-two year old individual from outside the company to fill the position. Importantly, the Plaintiff did not apply for the Mingo Junction position.

One month after the Plaintiff was terminated, the Defendants won a contract at a facility in Warren, Ohio. A superintendent position was available at the Warren facility. The Plaintiff asserts that he informed the Defendants that he was interested in any position at the Warren facility, but that he was not interviewed, hired, or transferred there. (Steiner Dep. at 82–85.) Instead, the Defendants transferred an employee from another facility to fill the superintendent position in the Warren facility. The Plaintiff, however, did not formally apply for this position either.

## SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) governs summary judgment and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

## ADEA

The Plaintiff has asserted a claim for age discrimination under the ADEA and Ohio law. It is axiomatic that "[t]he *McDonnell Douglas/Burdine* formula is the evidentiary framework applicable ... to claims brought under ... the ADEA ... and to claims of discrimination under Ohio State law." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir.1992) (citations omitted). Therefore, to the extent that the Plaintiff has asserted a State law claim for age discrimination, it will be resolved simultaneously with his Federal claim.

### A. Prima Facie Case of Age Discrimination

Generally, in the absence of direct evidence, a plaintiff may establish a circumstantial case of age discrimination using the framework set forth in *McDon-*

*nell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as modified for ADEA cases in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 310–11, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The modified *McDonnell Douglas* framework requires a plaintiff to establish a prima facie case as follows:

(1) he was a member of a protected class;

(2) he was subjected to an adverse employment action;

(3) he was qualified for the particular position; and

(4) the successful applicant was a substantially younger person.

*Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 371 (6th Cir.1999). In the case *sub judice,* the Defendants have asserted that the Plaintiff was discharged pursuant to a reduction-in-force ("RIF"). If an employer discharges a plaintiff in connection with a RIF, "the plaintiff is not required to plead the fourth prong of the prima facie framework because in a reduction-of-force situation the plaintiff is not in fact replaced." *Id.* (*citing Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1126 (6th Cir.1998)). Rather, "the plaintiff must present 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons.'" *Id.* (*citing Scott,* 160 F.3d at 1126).

The Defendants have conceded that the Plaintiff can establish the first three elements of a prima facie case of age discrimination. Also, the Plaintiff has conceded that he cannot prove that he was replaced by a younger worker who assumed his responsibilities at the Weirton facility. (Steiner Dep. at 117–18.) Consequently, the Plaintiff attempts to prove the fourth element of his prima facie case using both direct and circumstantial evidence.

Provided the Plaintiff establishes a prima facie case, the burden shifts to the Defendants to "produce evidence of a non-discriminatory reason for its action," which may be the alleged RIF. *Godfredson,* 173 F.3d at 371 (*citing Scott,* 160 F.3d at 1126). If the Defendants provide the above-described evidence, the Plaintiff must then demonstrate by a preponderance that the proffered reason is pre-textual. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. Of course, the ultimate burden of persuasion always remains with the plaintiff. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The Plaintiff asserts that there is a genuine issue of material fact with respect to whether a RIF actually occurred at the Weirton facility. This presents a problem for the Plaintiff's case: If the Court determines that a RIF did not occur, the modified *McDonnell Douglas* standard does not apply, and the Plaintiff would be required to prove that he was replaced by a substantially younger employee. The Plaintiff, however, has already conceded that he was not replaced, and cannot establish a prima facie case of age discrimination under the traditional *McDonnell Douglas* age discrimination analysis. (Steiner Dep. at 117–18.) Therefore, the Plaintiff may only survive summary judgment if he establishes a prima facie case *in the RIF context.* Because of the awkward manner in which the Plaintiff has framed his opposition to the summary judgment motion, the Court must determine whether a RIF occurred at the Weirton facility.

■ A RIF "occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes,* 896 F.2d at 1465. The Defendant contends that a down-turn in the steel industry necessitated a RIF at the Weirton facility. The facts show that the

Defendants laid-off thirteen other employees around the same as the Plaintiff. Three positions were eliminated, and the Plaintiff was permanently discharged as part of the RIF. Despite the Plaintiff's ill-conceived protestations, a RIF occurred at the Weirton facility.[2] As such, the modified *McDonnell Douglas* framework of analysis shall be applied to the facts of this case. The Court, therefore must further analyze whether additional evidence exists to support the Plaintiff's contention that age motivated his discharge.

■ The Plaintiff asserts that circumstantial evidence of age discrimination exists which satisfies the modified *McDonnell Douglas* standard. The Plaintiff was the only one of fourteen employees not called back to work after a brief lay-off. Of the fourteen employees who were laid off, three (including the Plaintiff) were supervisory employees, or foremen.[3] In the months after the lay-off, the Defendants called the two other laid-off foremen back to work, but not the Plaintiff.[4] Because the Plaintiff was the only foreman not called back after the lay-off, he surmises that age motivated the Defendants' decision.

The Plaintiff's circumstantial evidence does not support a conclusion that age motivated his discharge. The recalled foremen are members of the Plaintiff's protected class and were each in their late fifties (respectively three and five years younger than the Plaintiff, age 62) at the time the Plaintiff was discharged. In similar circumstances, where an employee was replaced by a person only five years his junior, the Sixth Circuit held that because the replacement was not "substantially younger" than the plaintiff, he could not establish the fourth element of a prima facie case of age discrimination. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir.1998). Although the Plaintiff in the case *sub judice* was not replaced, he nevertheless must show that those recalled employees were substantially younger than him.[5] Such a showing would be circumstantial evidence that the Plaintiff was singled out for discharge because of his age, and would satisfy the fourth element of the modified *McDonnell Douglas* standard. However, the Plaintiff cannot show that the other foremen who were recalled were substantially younger, and the mere fact that he was not recalled is insufficient

---

**2.** The question still remains whether the RIF was a pre-text for discharging the Plaintiff for impermissible reasons.

**3.** The Plaintiff asserts that he was qualified to perform the jobs of younger, non-supervisory, employees who were recalled by the Defendants. (Response at 11–13.) The Sixth Circuit in *Barnes* explained that a prima facie case of age discrimination does not exist merely "if a plaintiff[ ] demonstrate[s] that younger persons were retained in other jobs which the plaintiff was qualified to perform." 896 F.2d at 1465. The court reasoned that "[a] different result would allow every person age 40-and-over to establish a prima facie case of age discrimination if he or she was discharged as part of a work force reduction." *Id.* Therefore, the issue is not whether the Defendants discriminated against the Plaintiff for bringing back younger employees

to work non-supervisory jobs at the Weirton facility for which the Plaintiff may also have been qualified. Rather, the Court need only determine whether the Defendants discriminated against the Plaintiff in calling back the other two foremen

**4.** The Court will assume for the purposes of this Memorandum Opinion that the foremen who were called back to work were otherwise similarly situated to the Plaintiff. The Defendants have only provided a single sentence in their papers which indicates that perhaps the Plaintiff was not similarly situated with the foremen who were called back.

**5.** To require otherwise, would permit any employee over 40 who was not called back from a lay-off to assert an age claim if a similarly situated employee, even one year his junior, was recalled.

circumstantial evidence of age discrimination to establish the fourth element of his prima facie case. Therefore, there are no genuine issues of material fact as to whether the Plaintiff was not recalled because of his age.

The Plaintiff, however, alleges that direct evidence of discrimination exists which also establishes that he was singled out because of his age. Two supervisors, John Carroll and William Young, allegedly made age-related comments to the Plaintiff prior to his discharge. According to the Plaintiff, in April 1997, Carroll informed the Plaintiff that he was going to be laid-off. Evidently, the Plaintiff inquired as to why younger employees were not going to be laid-off, and Carroll responded "you are old enough to retire." (Steiner Dep. at 73–4.) The Plaintiff was not laid-off at this time, but instead was returned to work at the Weirton facility. The second incident occurred at some time before the Plaintiff was laid-off, during a conversation between the Plaintiff and Young. Young allegedly told the Plaintiff "[w]hy don't you put a package together what it would take for you to retire." (Steiner Dep. at 165.) The Plaintiff contends that the comments show that he was targeted by the Defendants for discharge based upon his age.

■ Discriminatory comments by persons with supervisory responsibility for the decision to discharge a protected employee may indicate age discrimination. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354–55 (6th Cir.1998). However, the Sixth Circuit has held that " 'isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.' " *Id.* at 355 (*quoting Phelps v. Yale Security, Inc.*, 986 F.2d 1020, 1025 (6th Cir.1993)). A direct nexus between the comments and the adverse employment action is not necessary, but

goes to their probative value. *See id.* Additionally, multiple alleged discriminatory comments are not viewed in isolation, but rather with the understanding that "the remarks buttress one another as well as any other [ ] evidence supporting an inference of discriminatory animus." *Id.* at 356.

■ The comments made by Young and Carroll do not establish that the Plaintiff was targeted for discharge because of his age. The comment made by Carroll some eighteen months prior to the Plaintiff's discharge, is insufficient evidence of discriminatory animus. First, the temporal connection between the comment and the adverse employment action is too remote for this Court to conclude that the comment was related to the Plaintiff's discharge. Next, the Plaintiff was sent back to work at the Weirton facility to perform catch-all maintenance duties for eighteen months prior to being discharged, and was paid at a foreman's rate. Finally, the comment does not indicate an underlying age bias against Plaintiff. *Cf. Ercegovich*, 154 F.3d at 355. (A supervisor remarked that "[the] company is being run by white haired old men waiting to retire, and this has to change," and that he did "not want any employee over 50 years old on his staff."). Therefore, standing alone, Carroll's comment is not adequate evidence that the Plaintiff was discharged because of his age.

■ With respect to the second comment made to the Plaintiff, the Court cannot find any evidence of discriminatory animus. Young merely asked the Plaintiff to describe what it would take for him to retire. Offering an older employee the opportunity to present a retirement proposal to his employer, without more, is not evidence of age-based discriminatory animus. *See Debs v. Northeastern Illinois University*, 153 F.3d 390, 396–97 (7th Cir.

1998). There is no other evidence to suggest that the Plaintiff was discharged because of his age. Accordingly, the Court finds that the comment made by Young to the Plaintiff is insufficient evidence of age-based discrimination.

Finally, even if the Court takes both comments together, the totality of the evidence does not suggest that the Plaintiff was targeted for discharge because of his age. The dissociate comments made by each of the supervisors were neither related directly to the Plaintiff's age nor his ability to perform his job duties because of his age, only to his ability to retire. Indeed, there is no evidence that the Defendants used the Plaintiff's ability to retire as a proxy for age. *See Allen v. Diebold,* 33 F.3d 674, 676 (6th Cir.1994) ("[T]he ADEA prohibits only actions actually motivated by age and does not constrain an employer who acts on the basis of other factors—pension status, seniority, wage rate—that are empirically correlated with age. Of course an employer may not use any of these factors as a proxy for age, but age itself must be the motivating factor behind the employment action in order to constitute an ADEA violation.") (Citation omitted). Considering the totality of the evidence, the comments are not circumstantial evidence of age discrimination. Furthermore, those foremen who were called back to work instead of the Plaintiff after the lay-off were not substantially younger than he was. There being no other evidence to support the Plaintiff's case, the Plaintiff cannot establish the fourth element of his prima facie case.

Nevertheless, the Court will address the Defendants' asserted legitimate nondiscriminatory reason for discharging the Plaintiff. The Defendants assert that a down-turn in the steel industry necessitated a RIF at the Weirton facility, and that the Plaintiff's position was eliminated as a result. The Defendants assert that because of a steel import crisis the blast furnace at the Weirton facility was idled in 1998, resulting in a "reduction in production" which "led to a need for [the Defendants] to reduce [their] workforce and overhead at the Weirton facility." (Young Aff. ¶ 3.) Furthermore, the Defendants state that the Plaintiff's position was eliminated as a "direct result of the business/financial need to reduce the workforce at the Weirton facility. Mr. Steiner's position specifically was eliminated because it was the most expendable and least necessary salaried position at the Weirton facility." (Young Aff. ¶ 5.) Several other foremen absorbed the Plaintiff's former responsibilities. (*See id.*) In as much as the Defendants have presented adequate evidence of a legitimate non-discriminatory reason for discharging the Plaintiff, the Plaintiff must show that the RIF was pre-text for his discharge. "A plaintiff can prove pretext 'by showing that the Company's reasons have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they were factors, by showing that they were jointly insufficient to motivate the discharge.'" *Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1329–30 (6th Cir.1994) (*citing Ridenour v. Lawson Co.,* 791 F.2d 52, 56 (6th Cir. 1986)). The Plaintiff must also show that discrimination was the real motivation behind the adverse employment decision. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. at 512, n. 4, 113 S.Ct. 2742.

The Plaintiff challenges the Defendants' assertion that an economic downturn in the steel industry necessitated his discharge as part of a RIF. The Plaintiff argues that despite one blast furnace being inoperative at the Weirton facility, steel was still being produced there. (Steiner Dep. at 245–46.) The Plaintiff further

opines that "business was still going the same [at the Weirton facility]. . . . It seemed like they were putting out steel." (Steiner Dep. at 246.) The Plaintiff, however, does not offer any *evidence* to refute the Defendants' assertion that the idling of a blast furnace cut production and necessitated a reduction in workers and overhead. The Plaintiff also does not take issue with the Defendants' assertion that his was the most expendable and least necessary salaried position at ⋅ the Weirton facility. "[W]here, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory . . . an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred." *Reeves v. Sanderson*, 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000). Therefore, even if the Plaintiff cannot overcome the Defendants' asserted legitimate non-discriminatory reason for discharging him, and the Defendants would be entitled to summary judgment.

### B. Failure to Transfer/Failure to Hire Based on Age

The Plaintiff claims that the Defendants failed to transfer him to positions which were open at two separate facilities: Mingo Junction, Pennsylvania and Warren, Ohio. Although the Plaintiff's claim against the Defendants with respect to the Mingo Junction position has been properly asserted as a failure to transfer claim, the Plaintiff's claim concerning the Warren facility position is not. The claim concerning the Warren facility position is properly asserted as a failure to rehire or recall claim, and the Court will treat it as such.

### 1. Mingo Junction Facility

 The Plaintiff claims that the Defendants failed to transfer him to an open position at their Mingo Junction facility. The *McDonnell Douglas* framework was modified by *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998), where a plaintiff asserts that his employer failed to transfer him to an available position for impermissible reasons. "Although an employer is under no obligation to transfer to another position in the company an employee whose position has been eliminated, the employer violates the ADEA when it transfers other displaced employees but does not place the plaintiff in a new position because of age discrimination." *Id.* at 351. *Ercegovich* requires a complainant to carry the initial burden of proving a prima facie discrimination case by demonstrating:

1) he belongs to a protected class;

2) at the time of his termination [or layoff] he was qualified for other available positions within the corporation;

3) the employer did not offer such positions to the plaintiff; and

4) a similarly-situated employee who is not a member of the protected class was offered the opportunity to transfer to an available position, or other direct, indirect, or circumstantial evidence supporting an inference of discrimination.

*Ercegovich*, 154 F.3d at 351. Additionally, the burden shifting analysis described in the preceding section applies in the failure to transfer context, and the ultimate burden of proof remains with the Plaintiff. There is no question that the Plaintiff belongs to a protected class, that he was qualified to hold a maintenance position, and that the Defendants did not offer the Plaintiff an opportunity to transfer to the Mingo Junction position.

■ The Plaintiff, however, cannot establish the fourth element. There is no evidence that a similarly situated employee, not in the protected class, was given the opportunity to transfer into the Mingo Junction position. Rather, the undisputed evidence shows that the Defendants hired someone from outside the company to fill the position. There is no evidence that any other of the Defendants' employees was given an opportunity to transfer into the Mingo Junction position.[6] The Plaintiff has not offered any other evidence that age played a factor in not transferring the Plaintiff to the Mingo Junction position. Without more, the Plaintiff cannot establish a prima facie case of failure to transfer him to the Mingo Junction facility based on age, and the Defendants are entitled to summary judgment.

The Court will address the Defendants' asserted legitimate non-discriminatory reason for not transferring the Plaintiff to the Mingo Junction facility, after considering the Plaintiff's failure to rehire or recall the Plaintiff for the superintendent position at the Warren facility.

### 2. Warren Facility

■ The Plaintiff has additionally asserted that the Defendants failed to hire him for an available position at their Warren facility after he had been discharged from the Weirton facility. To establish a prima facie case of age discrimination in a failure to rehire or recall situation, a plaintiff must meet a modified *McDonnell*

*Douglas* test. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The Plaintiff must establish:

(1) that he is a member of the protected age group;

(2) that he is qualified for the rehire or recall position;

(3) that he applied for the available position or can establish that the employer was otherwise obligated to consider him; and

(4) that the position went to a younger individual outside the protected class or that other reasonable evidence exists for inferring that he was denied a position because of his age.

*Wanger,* 872 F.2d 142, 145 (6th Cir.1989) (citing cases). As stated above, the burden shifting analysis applies in this context as well, and the ultimate burden of proof remains with the Plaintiff.

■ The Plaintiff can arguably only establish the first two elements of a prima facie case of failure to rehire or recall based on age. With respect to the third element, there is no dispute that the Plaintiff failed to apply for the position at the Warren facility after he was discharged from Weirton. Regardless, the Plaintiff claims that the Defendants were aware of his desire to apply for any available position at the Warren facility, and should have hired him as superintendent. "Generally, if one formally applies for [a] position, then the employer is under an obligation to consider the individual if he is otherwise qualified."[7] *Wanger v. G.A.*

6. Although the individual hired was 42 years old, and may be considered substantially younger than the Plaintiff, there is no evidence to suggest that age motivated the Defendants not to hire the Plaintiff for the Mingo Junction position. Evidence of age-based discrimination against the Plaintiff in filling the Mingo Junction position is absent particularly because the Plaintiff did not apply for the position which had been posted in the local newspaper for approximately ten days prior to his discharge.

7. The Sixth Circuit noted that in limited circumstances a formal application may not be necessary to establish a prima facie case of discrimination. For example, an application is not required where one would be fruitless. *Wanger,* 872 F.2d at 145. There is no evidence that had the Plaintiff formally applied

*Gray Co.*, 872 F.2d at 146. In the case *sub judice*, as in *Wanger*, the Plaintiff did not formally apply for the available position. Merely asserting that the Defendants were *aware* of the Plaintiff's desire to obtain the position is also insufficient to establish a prima facie case under the ADEA. *See id.* at 146–47 (*citing Williams v. Hevi–Duty Elec. Co.*, 819 F.2d 620, 630 (6th Cir.) *cert. denied*, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987)).[8] In *Wanger*, the Sixth Circuit held that because the plaintiff failed to establish that he applied for the position which he sought, he could not state a prima face case of discrimination. *See id.* at 147. Accordingly, because the Plaintiff in the case *sub judice* failed to apply for the superintendent position, and despite the Defendants' alleged awareness of his desire to obtain a position at the Warren facility, he cannot establish a prima facie case of age discrimination for failure to rehire or recall.

 Additionally, the Plaintiff cannot establish the fourth element of a prima facie case of failure to hire or recall. The Defendants ultimately transferred another employee into the superintendent position at the Warren facility.[9] The individual was a member of the Plaintiff's protected class (he was 58 years old), and was not substantially younger than the Plaintiff. Moreover, the Plaintiff has not asserted any other evidence that leads this Court to conclude that age motivated the Defen-

dants not to rehire or recall the Plaintiff for the position at the Warren facility.

Even assuming that for each available position the Plaintiff can make out a prima facie case, the Defendants have asserted the Plaintiff's failure to apply for both positions as a legitimate non-discriminatory reason for not transferring him. For the reasons set forth above, if the Plaintiff did not apply for the available positions, despite his expressions of interest, the Defendants had no affirmative obligation to consider him for them. *See Wanger*, 872 F.2d at 146–47; *Williams*, 819 F.2d at 629–30. This is particularly so where, as here, a plaintiff is no longer an employee at the time a position opens. *See id.* Importantly, the Plaintiff has not presented any evidence that the Defendants' asserted reason for not transferring, rehiring or recalling him was a pretext for age discrimination. Accordingly, the summary judgment for the Defendants is warranted on the Plaintiff's failure to transfer and failure to rehire or recall claims.

## CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiff cannot establish a prima facie case of age discrimination under the traditional *McDonnell Douglas* framework, the modified RIF framework, or based upon the Defendants' failure to transfer, rehire, or recall him. Accordingly, as there are no genuine issues of mate-

---

for either position, his application would not have been considered by the Defendants.

8. In *Williams*, the Sixth Circuit held that

it cannot fairly be said that everyone who ever expressed an interest in working for [the company] had "applied" to work there. [The company] was not required to accept applications before it needed new employees, and when it decided to start accepting applications it was not required to seek out all who could be said to have given a "generalized expression

of interest" in the past ... and invite them to apply for work...."

819 F.2d at 630.

9. The fact that another of the Defendants' employees was transferred to the Warren facility likely caused the Plaintiff to assert his claim as a failure to transfer. As this Court has already stated, because the Plaintiff had been discharged at the time the position at the Warren facility opened, the claim is properly treated as a failure to rehire or recall.

rial fact, the Defendants' Motion for Summary Judgment (ECF–Dkt.# 35) is **GRANTED.**

**IT IS SO ORDERED.**