Sharon HANSBROUGH, Plaintiff,

v.

TITLEMAX OF TENNESSEE,
INC., Defendant.

No. 12–2746–STA–tmp.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 6, 2013.

Sharon Hansbrough, Memphis, TN, pro se.

James R. Mulroy, II, Jackson Lewis LLP, Memphis, TN, for Defendant.

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

S. THOMAS ANDERSON, District Judge.

Before the Court are Plaintiff Sharon Hansbrough's ("Plaintiff") Objections to the Magistrate Judge's Report and Recommendation on Defendant Titlemax of Tennessee's ("Defendant") Motion for Judgment on the Pleadings.[1] (D.E. # 30). On July 19, 2013, Magistrate Judge Pham issued a report and recommendation that Defendant's Motion for Summary Judgment be granted. (D.E. # 29). Plaintiff filed timely objections to the Magistrate Judge's report on August 5, 2013. For the following reasons, the Magistrate Judge's Report is **ADOPTED**.

■ Federal Rule of Civil Procedure 72(b)(2) states "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file *specific written objections* to the proposed findings and recommendations."[2] A general objection to a report is insufficient and has the same effect as a failure to object.[3] When a party fails to object to a magistrate judge's report, she waives her right to appeal.[4]

■ Plaintiff fails to identify any specific objection to the Magistrate Judge's Report. Rather, Plaintiff merely reasserts facts already alleged in her pleadings and briefing. Plaintiff also attempts to explain deficiencies in the record cited by the Magistrate Judge by providing additional evidence. However, because this evidence was not before the Court on Defendant's Motion for Summary Judgment, the Court cannot now consider it. Beyond this reiteration of her allegations and an assertion in her belief that she has provided adequate documentation, Plaintiff presents no objections to anything in the Magistrate Judge's report.

Because Plaintiff has failed to make any specific objections to the Magistrate Judge's Report and Recommendation, any objections are waived and the Court hereby **ADOPTS** the Report and Recommendation.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

TU M. PHAM, United States Magistrate Judge.

Before the court by order of reference is defendant TitleMax of Tennessee, Inc.'s ("TitleMax") Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment, filed on February 6, 2013. (ECF No. 19.) Plaintiff Sharon Hansbrough, *pro se*, filed a response in opposition to the motion on February 22, 2013. TitleMax filed a reply on March 5, 2013. For the following reasons, the court rec-

---

1. As the Magistrate Judge correctly noted in his Report and Recommendation, Federal Rule of Civil Procedure 12(d) states that if matters outside the pleadings are presented on a motion under Rule 12(b)(6) or 12(c), the court must treat the motion as one for summary judgment under Rule 56. Because both parties presented evidence outside the pleadings, the Magistrate Judge properly treated this motion as one for summary judgment and the Court will likewise treat it as such.

2. Fed.R.Civ.P. 72(b)(2) (emphasis added).

3. *Howard v. Secretary of HHS,* 932 F.2d 505, 508–09 (6th Cir.1991).

4. *Id.* at 508 ("a party waives his or her right to appeal by failing to file objections to a magistrate's report and recommendation.").

ommends that TitleMax's motion be granted.

## I. PROPOSED FINDINGS OF FACT

### A. Undisputed Facts

Unless otherwise noted, the following facts are undisputed. This case arises from Sharon Hansbrough's allegations that her former employer, TitleMax, discriminated against her on the basis of her age, by denying her promotions and ultimately terminating her employment. (Am. Compl., ECF No. 13.) Hansbrough was hired by TitleMax on June 2, 2010, as a Customer Service Representative. (Def.'s Statement of Facts ("DSOF") ¶ 1, ECF No. 19; Pl.'s Rebuttal to Defendant's Statement of Facts ("PSOF") ¶ 1, ECF No. 20.) She was 40 years old at the time of her hire. (DSOF ¶ 6; PSOF ¶ 6.) The hiring manager at the time was District Manager Tommy Brown, who was 46 years old, and Hansbrough's immediate supervisor was Cheryl Rogers, who was 44 years old. (DSOF ¶ 3; PSOF ¶ 3.)

At around the start of her employment, Hansbrough expressed to Brown an interest in becoming an Assistant Manager. (Am. Compl. ¶ 10; First Brown Decl. ¶ 3, ECF No. 19–3.) However, during the course of her employment, Hansbrough was never promoted to Assistant Manager. (DSOF ¶ 10–15; PSOF ¶ 13.) By December 1, 2010, Hansbrough had seven absences. (DSOF ¶ 15; PSOF ¶ 12.) Brown was aware of Hansbrough's interest in promotion, but advised her that because of her attendance issues "there was no way that she would be considered for promotion." (First Brown Decl. ¶ 3, ECF No. 19–3, Ex. 2.) According to Brown, "[t]here is virtually no possibility that a new em-

ployee with a similar pattern of absences and tardiness would be promoted soon after being hired." (*Id.* ¶ 6.) On January 14, 2011, Hansbrough was placed on a Final Corrective Action Notice/Improvement Plan ("Corrective Action Plan") due to multiple occasions of absenteeism. (DSOF ¶ 11; PSOF ¶ 10.) A document submitted by TitleMax, titled "Summary Record of Sharon Hansbrough's Absences," which summarizes Hansbrough's employment history and absences, indicates that Hansbrough was also placed on the Corrective Action Plan for "unacceptable conduct." (ECF No. 19–3, Ex. 2 & A.) An employee who is placed on a Corrective Action Plan may not apply for a promotion. (DSOF ¶ 12; PSOF ¶ 10.) On or about February 25, 2011, Hansbrough was terminated. (DSOF ¶ 16; PSOF ¶ 13.) According to TitleMax, Hansbrough was terminated for "unacceptable conduct" because she allowed a customer to take out two title loans simultaneously, in violation of both company policy and Tennessee law. (DSOF ¶ 16.) Hansbrough claims, however, that she never allowed a customer to take out two loans simultaneously, and that she was fired for her attendance issues.[1] (PSOF ¶ 13.) Brown states in his declaration that "[t]here are no employees under me who have committed similar offenses in such a sequence without being terminated." (First Brown Decl. ¶ 5, ECF No. 19–3, Ex. 2.)

### B. Allegations in the Complaint

In her amended complaint, Hansbrough claims that TitleMax discriminated against her based on her age in two ways: (1) by denying her three promotions to the position of Assistant Manager, and (2) by terminating her employment for her attend-

---

1. The "Summary Record of Sharon Hansbrough's Absences" document has two entries for February 25, 2011: "Late to work (9:40 a.m.)" and "Termination (absenteeism)." (ECF No. 19–3, Ex. A.)

ance issues.[2] According to the amended complaint, Hansbrough was informed by Brown at the start of her employment that she could apply for an Assistant Manager position when one became available. (Am. Compl. ¶ 10.) She was also advised by Brown that tenure with the company was not a factor when being promoted to an Assistant Manager position. (*Id.*) On August 26, 2010, an Assistant Manager position became available. (*Id.*) She was advised by Brown, via email, that in order to apply for the position, she would have to email him of her interest in the position. (*Id.*) When she emailed him as instructed, however, she claims that she received no response. (*Id.*) An employee named Roxanne Glass, who was 26 years old, was promoted to that Assistant Manager position. (*Id.*) In December 2010, another Assistant Manager position became available. (*Id.*) Hansbrough again emailed Brown indicating her interest in the position, but received no response. (*Id.*) An employee named Brian Harris, who was between 30 and 33 years old, was hired for the December Assistant Manager position. (*Id.*) When another Assistant Manager position opened up in January 2011, she again emailed Brown to let him know that she was interested in the position. (*Id.*) Hansbrough received no response from Brown, and on February 5, 2011, Vishanna Rogers, who was 35 years old, was given the position. (*Id.*) Hansbrough claims that she "was not even consider[ed] or interviewed" for any of the three aforementioned Assistant Manager positions. (*Id.*)

Hansbrough also alleges in her complaint that she was terminated on the basis of her age. She claims that another employee named Shayla Fleming, who was 21 years old, "also had attendance issues" but was not placed on a Corrective Action Plan and was never terminated during Hansbrough's employment. (*Id.*) Hansbrough further asserts that she and Fleming had the same managers. (*Id.*)

## C. Motion for Summary Judgment

TitleMax now moves for summary judgment on all of Hansbrough's claims. With respect to the three promotions to Assistant Manager, TitleMax argues that Hansbrough cannot establish a *prima facie* case of age discrimination because she cannot establish that she applied for or was qualified for the Assistant Manager positions. Specifically, TitleMax asserts that there is no record that Hansbrough ever properly applied for the promotions via the internal company intranet site, as required by the TitleMax Employee Internal Job Posting Program ("Job Posting Program"). In support of this argument, TitleMax submitted a copy of the Job Posting Program as well as the declaration of Human Resources Representative Jason Broce. The Job Posting Program states that to be eligible for a position, an employee must (among other requirements): (1) meet the minimum position requirements; (2) have held the current position for a minimum of three months; (3) have approval from the Regional Manager based on a recommendation by the District Manager; and (4) not be on an active Correction Action Plan or on probation. (*Job Posting Program;* ECF No. 19–2, Ex. E.) Moreover, the Job Posting Program instructs employees on how to apply for internal job opportunities:

> Detailed job descriptions will be posted on the corporate intranet and can be accessed through the Careers link. Qualified employees should apply online

---

**2.** The court sets forth below the allegations contained in the amended complaint for the limited purpose of providing some context to the undisputed facts under subsection I.A. At stated below, allegations in a complaint are not evidence and a party opposing summary judgment may not rest upon the mere allegations or denials in his or her pleadings.

for up to three positions at a time. All approvals and communications will be processed through this online application.

(*Id.*) Broce states in his declaration that an employee must express interest in a promotable position by making the immediate supervisor aware and by applying via the internal company intranet site. (Broce Decl. ¶ 9, ECF No. 19–2, Ex. 1.)

TitleMax further argues that, even if Hansbrough had applied for the Assistant Manager openings, she was not qualified for the promotions. TitleMax's Job Posting Program states that in order to be eligible for promotion, an employee must have held his or her current position for a minimum of three months and not be on an active Corrective Action Plan or on probation. TitleMax argues that because Hansbrough had only been employed 85 days by August 26, she was ineligible for the August promotion. TitleMax also argues that Hansbrough was ineligible for the Assistant Manager position that was filled on February 5 because she was placed on a Corrective Action Plan in January. As for the December Assistant Manager opening, TitleMax contends that even if Hansbrough had followed the appropriate steps to apply for the position, she would not have been competitive because she had incurred seven absences by December 2010. With respect to her termination, TitleMax contends that Hansbrough has failed to identify a similarly situated, nonprotected employee who was treated differently. According to Brown's declaration, Hansbrough was terminated for unacceptable conduct, specifically citing her history of attendance problems and an incident where Hansbrough allowed a customer to take out two title loans simultaneously in violation of company policy and Tennessee law. (*Id.* ¶ 4.) He also states that there are no employees under him "who have committed similar offenses in such a sequence without being terminated." (*Id.* ¶ 5.)

In her response to the motion, Hansbrough contests TitleMax's reasons for its decisions to not promote her and to terminate her employment. While initially asserting in her amended complaint that she was eligible for the January 2011 promotion, Hansbrough appears to concede in her response that her placement on a Corrective Action Plan in January made her ineligible for that position, which was filled on February 5, 2011. Hansbrough contends, however, that she was eligible "for at least two of the promotions August 2010 and December 2010." (PSOF ¶ 10.) With respect to the August 2010 promotion, she contends that the Job Posting Program's requirement that an employee be employed for 90 days prior to being eligible for promotion, was not implemented until after her termination in 2011. (PSOF ¶ 9.) In support of this assertion, Hansbrough attached a declaration from former TitleMax Assistant Manager Cheryl Rogers. Rogers states that she was promoted from Customer Service Representative to Assistant Manager within thirty days of her hire in 2008, and that during the time she worked for TitleMax—from August 2008 to July 2011—there was no policy prohibiting an employee from applying for a promotion where the employee worked less than 90 days in his or her current position. (PSOF ¶ 9; Rogers Decl. ¶ 3, ECF No. 20–1.) Regarding her termination, Hansbrough maintains that she was terminated for her attendance, not for any other unacceptable conduct, and that Fleming was not terminated despite having similar attendance issues. She disputes that she improperly advanced two loans simultaneously, because the TitleMax computer system would not permit that to happen. According to Rogers's declaration, the system used by TitleMax makes it impossible

to enter two loans on the same title on the same day. (PSOF ¶ 13; Rogers Decl. ¶ 4.)

With its reply, TitleMax attached a second declaration from Brown, in which he explains that the infraction committed by Hansbrough was the processing of an "add-on loan" to a customer who had already defaulted on a loan with a TitleMax affiliate. (Second Brown Decl. ¶ 2, ECF No. 23–1, Ex. 1.) According to Brown, the customer had failed to make payments on a loan, and repossession of the customer's vehicle had already been ordered by the time Hansbrough processed the add-on loan. (*Id.*) Brown states that while Hansbrough was processing the add-on loan, the computer system generated an alert message on her computer screen, indicating that the customer had defaulted on payments and should not be extended further funds. (*Id.*) Brown states that Hansbrough was not authorized to process the add-on loan, but did so "in direct contravention of TitleMax policy and procedure." (*Id.*) Brown also states in his second declaration that Fleming did not have the same attendance problems as Hansbrough, as Fleming "did not routinely miss work without providing reasonable notice, and did not accumulate two (2) or more unapproved absences in a rolling thirty-day period, as [Hansbrough] did." (*Id.* ¶ 4.) TitleMax also argues in its reply that, according to the Job Posting Program, a candidate for promotion must have a recommendation from his or her District Manager, and that based on Brown's first declaration, Hansbrough did not have his recommendation due to her absenteeism. (Def.'s Reply Br. at 5.) TitleMax concludes by arguing that "people of all ages, including people much older than [Hansbrough], worked and were promoted under the management of [ ] Brown. [Hansbrough] presents no comparable employee who was younger that was

treated more favorably under materially similar circumstances." (*Id.* at 7.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 12(d) states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Both parties have presented evidence outside the pleadings for the court to consider in deciding TitleMax's motion. Therefore, the court will consider TitleMax's motion as one for summary judgment. *See Northville Downs v. Granholm,* 622 F.3d 579, 585 (6th Cir.2010).

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *see also Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir.2009). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). "The moving party bears the initial burden of production." *Palmer v. Cacioppo,* 429 Fed.Appx. 491, 495 (6th Cir. 2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has met its burden, "the burden shifts to the nonmoving party, who must present some

'specific facts showing that there is a genuine issue for trial.'" *Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 200 (6th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Thompson v. Ashe,* 250 F.3d 399, 405 (6th Cir.2001). "The central issue 'is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Palmer,* 429 Fed.Appx. at 495 (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

## B. Age Discrimination

 The Age Discrimination in Employment Act ("ADEA") prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." *Brooks v. Davey Tree Expert Co.,* 478 Fed. Appx. 934, 940 (6th Cir.2012). "Regardless of the type of evidence submitted, the burden of persuasion remains on ADEA plaintiffs to demonstrate 'that age was the 'but-for' cause of their employer's adverse action.'" *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 811 (6th Cir.2011). Because Hansbrough does not contend that she has any direct evidence of age discrimination, the court must consider whether she has presented sufficient circumstantial evidence of discrimination to survive summary judgment.

### 1. Termination

 The analysis of age discrimination claims based on circumstantial evidence is guided by the well-established *McDonnell Douglas/Burdine* burden-shifting framework. *See, e.g., Brooks,* 478 Fed. Appx. at 940; *Provenzano,* 663 F.3d at 811–12. "In the first step, the employee carries the initial burden of establishing a prima facie case of age discrimination[.]" *Provenzano,* 663 F.3d at 812. To establish a *prima facie* case of age discrimination, a plaintiff must show that: "(1) he [or she] was at least 40 years old at the time of the alleged discrimination; (2) he [or she] was subjected to an adverse employment action; (3) he [or she] was otherwise qualified for the position; and (4) he [or she] was replaced by a younger worker." *Weatherby v. Fed. Exp.,* 454 Fed.Appx. 480, 489 (6th Cir.2012) (internal quotation marks omitted); *see also Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 521 (6th Cir.2008). "The fourth element may be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 317 (6th Cir.2007) (internal quotation marks omitted). "If the plaintiff makes this showing, 'the burden of production [then] shifts to the defendant to articulate a nondiscriminatory reason for its action.'" *Marsh v. E. Associated Estates Realty Corp.,* 521 Fed.Appx. 460, 466 (6th Cir.2013) (quoting *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 485 (6th Cir. 2010)). "Once a non-discriminatory reason has been offered, the burden of production returns to the plaintiff to show that the defendant's legitimate reasons are merely pretextual, and that she was in fact subjected to the adverse action on the basis of her age. Generally, a plaintiff demonstrates pretext by offering evidence that '(1) the employer's stated reason for termi-

nating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action.'" *Id.* (quoting *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 545 (6th Cir.2008)).

▉▉▉ With regard to Hansbrough's termination claim, it is undisputed that Hansbrough was at least 40 years old, suffered an adverse employment action by being terminated, and was qualified for her position as a Customer Service Representative. The court finds, however, that Hansbrough has failed to sufficiently establish a *prima facie* case of age discrimination because she has failed to show that she was replaced by a younger worker. In fact, she has not presented any evidence to show that anyone filled her position after her termination. In addition, she has not shown that a similarly situated employee outside her protected class was treated differently. To show that another employee is "similarly situated," a plaintiff need not demonstrate an "exact correlation," but instead must demonstrate that she and the other employee are similar in "all of the relevant aspects." *Laws v. Health-South N. Ky. Rehabilitation Hosp. Ltd. P'ship,* 508 Fed.Appx. 404, 411 (6th Cir. 2012) (citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344 (6th Cir.1998)) (internal quotation marks omitted). In the disciplinary context, the Sixth Circuit has held that "this requires that the plaintiff and proposed comparator have engaged in acts of 'comparable seriousness.'" *Dickens v. Interstate Brands Corp.,* 384 Fed. Appx. 465, 468 (6th Cir.2010) (quoting *Clayton v. Meijer, Inc.,* 281 F.3d 605, 611 (6th Cir.2002)). "Factors to consider include whether the individuals dealt with the same supervisor, were subject to the same standards ... and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Arnold v. City of Columbus,* 515 Fed.Appx. 524, 532 (6th Cir.2013) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992)) (internal quotation marks omitted).

The only comparator Hansbrough has offered is Shayla Fleming, who she claims—without any citation to materials in the record—"had the same attendance issues" as Hansbrough, but was not terminated. Hansbrough's unsupported allegations are not evidence, and cannot defeat a motion for summary judgment. *See Cambridge Capital Grp. v. Pill,* 20 Fed. Appx. 121, 124–25 (4th Cir.2001); *see also McNeil v. Sonoco Products Co.,* 519 Fed. Appx. 382, 383 (6th Cir.2013) (no *prima facie* case of discrimination where the plaintiff failed to proffer any evidence of a similarly situated employee who was treated more favorably and "instead relied—impermissibly—on argument and the allegations in his complaint"); *Walker v. Eyke,* 417 Fed.Appx. 461, 463 (6th Cir. 2011) ("The party opposing a motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (internal citation and quotation marks omitted); *Ward v. Dist. of Columbia,* 950 F.Supp.2d 9, 19, No. 10–0321(ABJ), 2013 WL 2897015, at *6 (D.D.C. June 14, 2013) ("The Court cannot rely on allegations [in plaintiff's complaint] alone at the summary judgment stage."); *Ricks v. U.S. Alliance Fire Prot., Inc.,* No. 11 C 1237, 2013 WL 1397707, at *1 (N.D.Ill. Apr. 5, 2013) ("Allegations in a complaint [ ] are not evidence, and courts may only consider admissible evidence when determining summary judgment motions."). However, even if the court were to give weight to Hansbrough's unsupported allegations,

her vague reference to Fleming having "the same attendance issues," without more, is insufficient to create a genuine dispute as to whether Fleming and Hansbrough were similarly situated. Indeed, the evidence submitted by TitleMax shows that Fleming and Hansbrough were not similarly situated, as Fleming did not have the same absenteeism problems as Hansbrough and had not violated any company policy, such as by approving an add-on loan. Therefore, because Hansbrough has failed to submit evidence from which a reasonable jury could conclude that she was replaced by a younger worker or was treated differently from a younger, similarly situated worker, the court recommends that TitleMax's motion for summary judgment be granted as to Hansbrough's termination claim.

### 2. *Failure to Promote*

▪ In the context of age discrimination based on a failure to promote, the plaintiff must show that: "(1) [he or] she is a member of the protected class; (2) [he or] she applied for and was qualified for a promotion; (3) [he or] she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Provenzano*, 663 F.3d at 812–13. It is undisputed that Hansbrough indicated to Brown that she was interested in being promoted to an Assistant Manager position but was never promoted, and that on each occasion employees younger than her received the promotions.[3] Hansbrough has not, however, presented sufficient evidence from which a reasonable jury could find that she applied for these

promotions, was qualified for these promotions, or that she had similar qualifications to the younger employees who were promoted. Therefore, Hansbrough has failed to establish a *prima facie* case of age discrimination based on a failure to promote.

#### a. *Applications*

▪ Hansbrough has failed to present sufficient evidence from which a reasonable jury could conclude that she actually applied for the Assistant Manager promotions in August 2010, December 2010, and February 2011. TitleMax has presented unrebutted evidence that Hansbrough did not apply for these promotions through the Job Posting Program, TitleMax's formal application procedure. This application procedure instructed employees to apply for posted positions via the company's internal intranet site, and that "[a]ll approvals and communications will be processed through this online application." Although Hansbrough, through Rogers's declaration, has raised a genuine issue of disputed fact as to whether TitleMax actually enforced the 90–day waiting period before an employee could apply for a promotion, she has failed to present any evidence to show that TitleMax did not follow the other procedures contained in the Job Posting Program.

▪ Hansbrough seems to suggest (at least in her amended complaint) that it was sufficient for her to apply for the promotions by sending Brown an email to notify him that she was interested in the promotions. "The United States Court of Appeals for the Sixth Circuit has recognized limited circumstances in which an employee will not be required to submit a formal application for an open position."

---

**3.** Although Hansbrough has not presented any evidence to show that the three employees who received the promotions were younger than her, TitleMax has not disputed the ages of the workers who were promoted.

*Johnson v. Cargill, Inc.,* 932 F.Supp.2d 872, 888 (W.D.Tenn.2013) (citing *Wanger v. G.A. Gray Co.,* 872 F.2d 142, 145 (6th Cir.1989)). These circumstances include (1) "an environment created by the employer in which prospective applicants understand that a formal application would be futile because discrimination is so entrenched or pervasive"; or (2) "where the employer has a practice of hiring without asking for applications or posting the opening ... [in which case] a plaintiff must show that he would have applied for the position had he been aware of it." *Id.* (quoting *Allen v. Deerfield Mfg. Inc.,* 424 F.Supp.2d 987, 994 (S.D.Ohio 2006)). Hansbrough has not demonstrated that either of these circumstances exist with TitleMax's application process. Even assuming, *arguendo,* that TitleMax had a practice of accepting applications through alternative means, such as via email, Hansbrough nevertheless has not provided evidence regarding the contents of her alleged emails sent to Brown. Thus, she has not presented evidence from which a reasonable jury could conclude that she applied for the promotions.

### b. Qualifications

▆▆▆ Hansbrough has also failed to provide any evidence to show that she was qualified for the Assistant Manager position, much less that she had similar qualifications to the three employees who were promoted to those positions. Hansbrough has produced no evidence as to her own qualifications, or the minimum objective criteria required for the Assistant Manager positions. *See Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 575–76 (6th Cir.2003) (en banc) ("At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job. The prima facie burden of showing that a plaintiff is qualified can

therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field."); *see also Gaglioti v. Levin Group, Inc.,* 508 Fed.Appx. 476, 480 (6th Cir.2012) (applying the *Wexler* standard to an age discrimination claim); *Hale v. ABF Freight Sys., Inc.,* 503 Fed.Appx. 323, 333 (6th Cir.2012) (same). The only evidence in the record that is arguably pertinent to the issue of qualifications is Brown's declaration, in which he asserts that he informed Hansbrough that there was "no way that she would be considered for promotion" based on her attendance problems. Beyond that, there is no evidence that touches upon Hansbrough's qualifications or the minimum objective criteria required for the Assistant Manager position. Thus, no reasonable jury could conclude, based on the record, that Hansbrough was qualified for the position of Assistant Manager.

Moreover, Hansbrough has presented no evidence that she possessed qualifications that were similar to the workers who received the promotions. By not providing any evidence of either her own qualifications or the qualifications of the three promoted employees, Hansbrough has failed to satisfy both the second and fourth prongs of the *prima facie* case for failure to promote. *See, e.g., Hawkins v. Memphis Light Gas and Water,* 520 Fed.Appx. 316, 318–19 (6th Cir.2013) (requiring that a plaintiff show similar qualifications to the promoted employee to satisfy the fourth prong of a *prima facie* case of discrimination based on failure to promote); *Johnson v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.,* 502 Fed.Appx. 523, 538 (6th Cir.2012) (finding that the plaintiffs "made no effort whatsoever to show that they were similarly situated to the chosen candidates on even the most basic level" and

their "utter failure to address the similarly situated element fatally undercuts their *prima facie* case, as well as their argument for pretext"); *Cleveland v. S. Disposal Waste Connections,* 491 Fed.Appx. 698, 703 (6th Cir.2012) (plaintiff failed to establish a *prima facie* case of race discrimination based on failure to promote where she "fail[ed] to provide any evidence that she was either qualified for either position or that other employees of similar qualifications who were not members of the protected class received a promotion to those positions"); *Culver v. CCL Label, Inc.,* 455 Fed.Appx. 625, 628 (6th Cir.2012) (finding plaintiff failed to satisfy the fourth prong of the *prima facie* case where there was "insufficient evidence of [the promoted employee's] experience to permit a threshold weighing of his qualifications against [the plaintiff's] qualifications" and the plaintiff admitted that she knew nothing of the promoted employee's qualification); *Provenzano,* 663 F.3d at 814 ("In [an ADEA] failure to promote claim, the emphasis in the fourth element is on the relative qualifications of the plaintiff and the employee who actually received the promotion. [ ] [W]hat is required ... is for the plaintiff to show she possesses 'similar qualifications' to the employee who received the promotion."). Therefore, the court recommends that TitleMax's motion for summary judgment be granted as to the failure to promote claims.

The court also notes that Hansbrough does not dispute that she was on a Corrective Action Plan at the time of the February promotion. According to TitleMax's Job Posting Program and Broce's declaration, the Corrective Action Plan made Hansbrough ineligible for promotion on February 5, 2011. Hansbrough has not presented any evidence, or even attempted to argue, that she was eligible for this promotion. In fact, in her response brief, she states that because she was on the Corrective Action Plan, she was eligible for "at least two of the promotions August 2010 and December 2010." (PSOF ¶ 10.) Thus, in addition to the reasons above, the court submits that summary judgment should be granted on the February promotion because Hansbrough was not eligible, and therefore not qualified, for that promotion.

## III. RECOMMENDATION

For the above reasons, the court concludes that, viewing the evidence in the light most favorable to Hansbrough, she has failed to sufficiently establish a *prima facie* case of age discrimination. Therefore, it is recommended that TitleMax's Motion for Summary Judgment be granted.

Respectfully submitted,

July 19, 2013.